IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

RODERICK KEITH                    :
KIMBROUGH,
                                  :
        Petitioner,
                                  :
vs.                                CIVIL ACTION NO. 09-0702-WS-C
                                  :
UNITED STATES OF                   CRIMINAL ACTION NO. 08-0150-WS
AMERICA,                          :

        Respondent.

## REPORT AND RECOMMENDATION

        Petitioner, Roderick Keith Kimbrough, a federal prison inmate

proceeding *pro se*, has filed a motion to vacate, set aside or correct his

sentence pursuant to 28 U.S.C. § 2255 (Doc. 35). This action has been referred

to the undersigned for entry of a report and recommendation pursuant to 28

U.S.C. § 636(b)(1)(B). Following consideration of all relevant pleadings in this

case, it is recommended that Kimbrough's § 2255 motion be denied and that

it be found he is not entitled to a certificate of appealability.

## FINDINGS OF FACT

        1.      On April 15, 2008, Kimbrough was charged, by criminal

complaint, with possession with intent to distribute crack cocaine on February

8, 2008 and March 31, 2008. (Doc. 1) On April 25, 2008, a two-count indictment charged Kimbrough with possession with intent to distribute 3.8 grams of crack cocaine on February 8, 2008, in violation of 21 U.S.C. § 841(a)(1), and possession with intent to distribute 3.2 grams of crack cocaine on March 31, 2008, in violation of 21 U.S.C. § 841(a)(1). (Doc. 3)

2.      On June 13, 2008, Kimbrough, through his attorney, William Scully, Esquire, filed notice of his intent to change his plea to guilty. (Doc. 19)

3.      On June 21, 2008, the parties filed a plea agreement and factual resume with the Court. (Doc. 21) The plea agreement reads, in relevant part, as follows:

## PLEA AGREEMENT

The defendant, **RODERICK KEITH KIMBROUGH**, represented by his counsel, and the United States of America have reached a Plea Agreement in this case, pursuant to Rule 11 of the Federal Rules of Criminal Procedure, the terms and conditions of which are as follows:

## RIGHTS OF THE DEFENDANT

1.      The defendant understands his/her rights as follows:

a.      To be represented by an attorney;

b.      To plead not guilty;

c.      To have a trial by an impartial jury;

2

        d.     To confront and cross-examine witnesses and to call witnesses and produce other evidence in his/her defense;

        e.     To not be compelled to incriminate himself/herself.

## WAIVER OF RIGHTS AND PLEA OF GUILTY

2.     The defendant waives rights b through e, listed above, and pleads guilty to Count One of the Indictment. Count One charges a violation of Title 21 United States Code, Section 841(a)(1), possession with the intent to distribute crack cocaine.

.    .    .

4.     The defendant expects the Court to rely upon his/her statements here and his/her response to any questions that he/she may be asked during the guilty plea hearing.

5.     The defendant is not under the influence of alcohol, drugs, or narcotics. He/She is certain that he/she is in full possession of his/her senses and mentally competent to understand this Plea Agreement and the guilty plea hearing which will follow.

6.     The defendant has had the benefit of legal counsel in negotiating this Plea Agreement. He/She has discussed the facts of the case with his/her attorney, and his/her attorney has explained to the defendant the essential legal elements of the criminal charge(s) which has/have been brought against him/her. The defendant's attorney has also explained to the defendant his/her understanding of the United States' evidence.

7.     The defendant understands that the United States has the burden of proving each of the legal elements of the criminal charge(s) beyond a reasonable doubt. The defendant and his/her counsel have discussed possible defenses to the

charge(s). The defendant believes that his/her attorney has represented him/her faithfully, skillfully, and diligently, and he/she is completely satisfied with the legal advice of his/her attorney.

8.      A separate document, entitled Factual Resume, will be submitted to the Court as evidence at the guilty plea hearing. The Factual Resume is incorporated by reference into this Plea Agreement. The defendant and the United States agree that the Factual Resume is true and correct.

9.      This plea of guilty is freely and voluntarily made and is not the result of force, threats, promises, or representations apart from those set forth in this Plea Agreement. There have been no promises from anyone as to the particular sentence that the Court may impose. The defendant avers that he/she is pleading guilty because he/she knows that he/she is guilty.

## **PENALTY**

10.      The maximum penalty the Court could impose as to Count One of the Indictment is:

a.      20 years imprisonment;

b.      A fine not to exceed $1,000,000.00[];

c.      A term of supervised release of 5 years, which would follow any term of imprisonment. If the defendant violates the conditions of supervised release, he/she could be imprisoned for the entire term of supervised release; and

d.      A mandatory special assessment of $100.00.

## **SENTENCING**

11.     The Court will impose the sentence in this case. The United States Sentencing Guidelines apply in an advisory manner to this case. The defendant has reviewed the application of the Guidelines with his/her attorney and understands that no one can predict with certainty what the sentencing range will be in this case until after a pre-sentence investigation has been completed and the Court has ruled on the results of that investigation. The defendant understands that at sentencing, the Court may not necessarily sentence the defendant in accordance with the Guidelines. The defendant understands that he/she will not be allowed to withdraw his/her guilty plea if the applicable guideline range is higher than expected, if the Court departs from the applicable advisory guideline range, or if the Court imposes a sentence notwithstanding the Guidelines.

12.     The United States may provide all relevant sentencing information to the Probation Office for purposes of the pre-sentence investigation. Relevant sentencing information includes, but is not limited to, all facts and circumstances of this case and information concerning the defendant's conduct and background.

13.     The defendant understands that this Plea Agreement does not create any right to be sentenced in accordance with the Sentencing Guidelines, or below or within any particular guideline range, and fully understands that determination of the sentencing range or guideline level, or the actual sentence imposed, is solely the discretion of the Court.

14.     Both the defendant and the United States are free to allocute fully at the time of sentencing.

.     .     .

## UNITED STATES' OBLIGATIONS

16.     The United States will not bring any additional

charges against the defendant related to the facts underlying the Indictment and will move to dismiss Count Two of the Indictment at sentencing. This agreement is limited to the United States Attorney's Office for the Southern District of Alabama and does not bind any other federal, state, or local prosecuting authorities.

17.    The United States will recommend to the Court that the defendant be sentenced at the low end of the applicable advisory sentencing guideline range as determined by the Court.

## APPLICATION OF U.S.S.G. § 5K1.1 AND/OR FED.R.CRIM.P. 35

18.    If the defendant agrees to cooperate with the United States, he/she agrees to the following terms and conditions:

.    .    .

g.    If the defendant provides full, complete, truthful and substantial cooperation to the United States, which results in substantial assistance to the United States in the investigation or prosecution of another criminal offense, a decision specifically reserved by the United States in the exercise of its sole discretion, then the United States agrees to move for a downward departure in accordance with Section 5K1.1 of the United States Sentencing Guidelines or Rule 35 of the Federal Rules of Criminal Procedure, whichever the United States deems applicable. The United States specifically reserves the right to make the decision relating to the extent of any such departure request made under this agreement based upon its evaluation of the nature and extent of the defendant's cooperation. The defendant understands that the United States will make no representation or promise with regard to the exact amount of reduction, if any, the United States might make in the event that it determines that the defendant has provided substantial assistance. The defendant understands that a mere

interview with law enforcement authorities does not constitute substantial assistance for this purpose. The defendant also understands that should he/she provide untruthful information to the United States at any time, or should he/she fail to disclose material facts to the United States at any time, the United States will not make a motion for downward departure. If the defendant's effort to cooperate with the United States does not amount to substantial assistance as determined solely by the United States, the United States agrees to recommend to the district court judge who sentences the defendant that the defendant receive a sentence at the low end of the applicable advisory guideline range.

.    .    .

## LIMITED WAIVER OF RIGHT TO APPEAL SENTENCE

19.    The defendant acknowledges that he/she is aware that 18 U.S.C. § 3742 affords a defendant the right to appeal the sentence imposed. In exchange for the recommendations made by the United States in this Plea Agreement, the defendant knowingly and voluntarily waives the right to appeal any sentence imposed in this case.

20.    With the limited exceptions noted below, the defendant also waives his/her right to challenge any sentence so imposed, or the manner in which it was determined, in any collateral attack, including but not limited to, a motion brought under 28 U.S.C. § 2255. "Any sentence so imposed" includes any determination or sentence imposed in a supervised release revocation proceeding.

21.    The defendant reserves the right to contest in an appeal or post-conviction proceeding any of the following:

a.    Any punishment imposed in excess of the statutory maximum;

> b.      Any punishment that constitutes an upward departure from the guideline range; or

> c.      A claim of ineffective assistance of counsel.

> 22.     In addition, the defendant reserves the right to petition the Court for resentencing pursuant to 18 U.S.C. § 3582 in the event of a future retroactive amendment to the Sentencing Guidelines which would affect the defendant's sentence.

(*Id.* at 1, 2-4, 4-5, 7-8 & 10 (emphasis in original)) Appearing before Kimbrough's signature line on page 12 of the agreement is this paragraph: "I have consulted with my counsel and fully understand all my rights with respect to the offenses(s) charged in the Indictment pending against me. **I have read this Plea Agreement and carefully reviewed every part of it with my attorney**. I understand this agreement, and I voluntarily agree to it. I hereby stipulate that the Factual Resume,[1] incorporated herein, is true and accurate in

---

[1]     The Factual Resume, which Kimbrough also signed, reads as follows:

The defendant, **RODERICK KEITH KIMBROUGH**, admits the allegations of Count One of the Indictment.

### ELEMENTS OF THE OFFENSE

**KIMBROUGH** understands that in order to prove a violation of Title 21, United States Code, Section 841(a)(1), as charged in Count One of the Indictment, the United States must prove:

First:      That the defendant knowingly and willfully possessed cocaine base (crack cocaine) as charged; and

8

---

Second:    That he possessed the substance with the intent to distribute it.

## OFFENSE CONDUCT

Defendant, **RODERICK KEITH KIMBROUGH**, admits in open court and under oath that the following statement is true and correct and constitutes evidence in this case.

On or about February 8, 2008, Corporal Dawn Alfonsi of the Mobile County Sheriff's Office, Narcotics and Vice Unit (MCSO) along with Agent Kevin Wright, Alabama Alcohol Beverage Control Board, Enforcement Division (ABC) met with a reliable confidential informant (CI). The informant advised he/she could meet RODERICK KEITH KIMBROUGH, known as "Keith", and purchase crack cocaine from him at his residence on Woodruff Road in Whistler, Alabama.

The informant was furnished with $160.00 in buy-money and equipped with an audio and video recording device. Alfonsi and Wright followed the informant to a location near the residence. After a short time, the informant was followed back to a prearranged location. Once back at the location, the informant handed over the crack cocaine to Wright and Alfonsi. The informant advised that when they arrived at the residence, RODERICK KEITH KIMBROUGH exited his residence and met the informant in the yard. RODERICK KEITH KIMBROUGH took crack cocaine from a gold/brown colored Acura parked in the yard. KIMBROUGH then sold the informant approximately 3.8 grams of crack cocaine and the informant handed KIMBROUGH the $160.00 in buy money.

On March 31, 2008, the CI advised he/she could again purchase crack cocaine from RODERICK KEITH KIMBROUGH. The informant was supplied with buy money and equipped with a recording device. The informant phoned RODERICK KEITH KIMBROUGH and told him he/she would meet him at a residence off Lott Road in Eight Mile, Alabama. While in route to the residence, the informant met KIMBROUGH on Jarrett Road and the two stopped their vehicles on Bent Tree Way off Jarrett Road in Eight Mile, Alabama. KIMBROUGH exited his vehicle and walked up to the informant's vehicle and sold the informant approximately 3.2 grams of crack cocaine. Alfonsi and Wright observed KIMBROUGH meet the informant.

9

every respect, and that had the matter proceeded to trial, the United States

could have proved the same beyond a reasonable doubt." (*Id.*)

     4.     On June 23, 2008, Kimbrough entered a counseled guilty plea

to Count One of the Indictment. (Doc. 38, Guilty Plea Transcript)

> THE COURT:    . . . Mr. Kimbrough, let me get you to raise your right hand and take an oath, please, sir.

> (The Defendants were placed under oath.)

> THE COURT:    . . . I need to tell each of you that you are now under oath. If you answer any of my questions falsely, your answers may later be used against you in another prosecution for perjury or for making a false statement.

> Do you understand that . . . Mr. Kimbrough?

> DEFENDANT KIMBROUGH:    Yes, sir.

>       .    .    .

> THE COURT:    And Mr. Kimbrough, would you state your true, full name for the record, please, sir.

> DEFENDANT KIMBROUGH:    R o d e r i c k   K e i t h

---

    Other than the above stated drug amounts, the United States and the defendant do not have an agreement as to total drug amount attributable to the defendant for purposes of relevant conduct and both parties are free to represent their respective positions at sentencing.

(Doc. 21, FACTUAL RESUME, at 1-2)

Kimbrough.

THE COURT:        And what is your age, please, sir?

DEFENDANT KIMBROUGH:     40.

THE COURT:        And how much education have you completed?

DEFENDANT KIMBROUGH:     11th.

THE COURT:        And Mr. Scully, to the best of your knowledge, is Mr. Kimbrough fully competent to enter a valid plea today?

MR. SCULLY:       Yes, sir.

THE COURT:         . . . Have either of you ever been treated for any mental illness or addiction to narcotic drugs of any kind? . . . Mr. Kimbrough?

DEFENDANT KIMBROUGH:     Substance Abuse Program.

THE COURT:        And where was that and how long ago?

DEFENDANT KIMBROUGH:     Ventress Correctional Facility. . . . '99.

THE COURT:        Are either of you currently under the influence of any drug or medication or alcoholic beverage of any kind? . . . Mr. Kimbrough?

DEFENDANT KIMBROUGH:     No, sir.

THE COURT:        Have each of you received a copy of the indictment in your case, had a full opportunity to read it and

review it with your attorney, and do you understand the charge contained in the indictment? . . . Mr. Kimbrough?

DEFENDANT KIMBROUGH:    Yes, sir.

THE COURT:      Is it necessary that I read the indictment to you . . . Mr. Kimbrough?

DEFENDANT KIMBROUGH:    No, sir.

THE COURT:      Are each of you fully satisfied with the representation that you've received from your attorney in this case, and have you fully discussed with your attorney all of the facts surrounding the charge? . . . Mr. Kimbrough?

DEFENDANT KIMBROUGH:    Yes, sir.

THE COURT:      . . . I have in this case a written plea agreement in each of your cases, and this plea agreement appears to have your signature at a couple of places, first at the end of the plea agreement and also at the end of the factual resume.

Did you, in fact, sign the document[s], . . . Mr. Kimbrough?

DEFENDANT KIMBROUGH:    Yes, sir.

THE COURT:      By signing this document, you are acknowledging that you have received a copy of it, that you've had a chance to discuss it with your attorney, that you fully understand the terms and conditions of the plea agreement and the factual resume, and that you agree with it.

Is that true . . . Mr. Kimbrough?

DEFENDANT KIMBROUGH:    Yes.

THE COURT:      Now, have there been any promises made to you by anyone or has anyone attempted in any way to force you to plead guilty or to pressure you or threaten you in any way . . . Mr. Kimbrough?

DEFENDANT KIMBROUGH:     No, sir.

THE COURT:      Now, the penalties that could be imposed if convicted of the count to which you are pleading guilty are outlined on page three of the plea agreement.

.      .      .

And for Mr. Kimbrough, if convicted of Count One of the indictment, you could receive a term of imprisonment up to 20 years, a fine not to exceed one million dollars, a supervised release term up to five years, and a special assessment of $100.

Do you understand that?

DEFENDANT KIMBROUGH:     Yes, sir.

THE COURT:      Are either of you presently on probation, parole, or supervised release in any other case?

.      .      .

How about Mr. Kimbrough?

DEFENDANT KIMBROUGH:     No, sir.

THE COURT:      . . . Also, if convicted of the charge in this case, you could lose valuable rights, including the right to vote, the right to hold public office, the right to serve on a jury, and the right to possess any kind of firearm. If it's a drug offense, you could lose certain Federal benefits. Do you understand that . . . Mr. Kimbrough?

DEFENDANT KIMBROUGH:     Yes, sir.

THE COURT:     The United States Sentencing Commission has issued guidelines for judges to consider in determining the sentence in a criminal case. Have you and your attorney talked about how those guidelines might affect your case . . . Mr. Kimbrough?

DEFENDANT KIMBROUGH:     Yes, sir.

THE COURT:     The way in which the Sentencing Guidelines apply to your case might be affected by what you say to the Court and to the probation officer. The Court will not be able to determine an appropriate sentence for your case until after a presentence report has been completed and you and the United States  have had an opportunity to challenge the facts reported by the probation officer.

Do you understand that . . . Mr. Kimbrough?

DEFENDANT KIMBROUGH:     Yes, sir.

THE COURT:     The sentence imposed might be different from any estimate your attorney or anyone else might have given you. Do you understand that . . . Mr. Kimbrough?

DEFENDANT KIMBROUGH:   ( N o d s   h e a d affirmatively.)

THE COURT:     After it has been determined what guideline applies to a case, the judge has the authority to impose a sentence that is more severe or less severe than the sentence called for in the Guidelines.

Do you understand that . . . Mr. Kimbrough?

DEFENDANT KIMBROUGH:     Yes, sir.

THE COURT:        Under some circumstances, you the United States each may have the right to appeal any sentence the judge imposes. For instance, you can appeal your conviction if you believe your guilty plea was somehow unlawful or involuntary or if there's some other fundamental defect in the proceedings not waived by your guilty plea.

You also have the right to waive your right to appeal, and I see by your plea agreements that you are waiving your right to appeal any sentence the judge imposes with the following exceptions: And that would be any punishment in excess of the statutory maximum, any punishment constituting an upward departure of the guideline range, and any claim of ineffective assistance of counsel.

Do you understand that . . . Mr. Kimbrough?

DEFENDANT KIMBROUGH:    Yes, sir.

THE COURT:        Parole has been abolished. If you are sentenced to prison, you will not be released on parole. Do you understand that . . . Mr. Kimbrough?

DEFENDANT KIMBROUGH:    Yes, sir.

THE COURT:        If the sentence is more severe than you expected or if I do not accept the sentencing recommendation in your plea agreement, you will still be bound by your plea. Even if you do not like the sentence imposed, you will not be able to withdraw your plea. The time to make that decision is now.

Do you understand that . . . Mr. Kimbrough?

DEFENDANT KIMBROUGH:    Yes, sir.

THE COURT:        You have the right to plead not guilty to any offense charged against you and to persist in that

plea. You would then have the right to a trial by jury. During that trial, you would have the right to the assistance of counsel for your defense and to the appointment of counsel if you could not afford to hire one, . . . the right to see and hear all of the witnesses and have your attorney cross-examine them, the right to testify yourself or to decline to testify and remain silent, and the right to have the Court issue subpoenas for any witnesses you wish to call in your defense.

At the trial, you would be presumed to be innocent, and the United States would have the burden of proving that you are guilty beyond a reasonable doubt. Before you can be convicted, all 12 jurors must be convinced that the United States has met that burden.

If you are found guilty after a trial, you would then have the right to appeal that conviction to a higher court, and if you could not afford to pay the cost of an appeal, the Government would pay those costs for you.

Do you understand all of that, Mr. Kimbrough?

DEFENDANT KIMBROUGH:    Yes.

THE COURT:        If you plead guilty, however, and if the Court accepts your plea, there will be no trial; you will be waiving or giving up your right to a trial and all the other rights that I just described.

Do you understand that, . . .Mr. Kimbrough?

DEFENDANT KIMBROUGH:    Yes, sir.

THE COURT:    Also   included   in   your plea agreement is a factual resume.

.        .        .

16

And for Mr. Kimbrough, the factual resume in your case has a statement of the elements of the offense charged in Count One, which states a violation of Title 21, United States Code, Section 841(a)(1).

And the elements of that offense are that you knowingly and willfully possessed crack cocaine as charged; and that you possessed that substance with the intent to distribute it.

Do you understand that those are the elements of the offense to which you are pleading guilty?

DEFENDANT KIMBROUGH:     Yes, sir.

THE COURT:        And do you fully understand that if there was a trial in this case, the United States would be required to present sufficient evidence to prove each of these essential elements beyond a reasonable doubt?

DEFENDANT KIMBROUGH:     Yes, sir.

THE COURT:        Also included in your factual resume is a statement of offense conduct. Did you, in fact, commit the acts and do the things that you have admitted to in this statement?

DEFENDANT KIMBROUGH:     Yes, sir.

THE COURT:        Then I find that the facts and acts to which you have admitted support a violation of the charge contained in Count One of the indictment. How do you now plead to that charge, guilty or not guilty?

DEFENDANT KIMBROUGH:     Guilty.

THE COURT:        And Mr. Scully, are you aware of any reason the Court should not accept Mr. Kimbrough's guilty plea at this time?

MR. SCULLY:      No, sir.

THE COURT:      Then it is the finding of this Court in the case of the United States versus . . . Roderick Keith Kimbrough, that each of you are fully competent and capable of entering an informed plea, that you are aware of the nature of the charge and the consequences of your plea, and that your plea of guilty is a knowing and voluntary plea supported by an independent basis in fact containing each of the essential elements of the offense. Your plea is therefore accepted, and you are now adjudged guilty of that offense.

(*Id.* at 3, 4, 4-5, 5, 6, 7, 8, 9, 9-10, 10, 11, 11-12 & 13-15)

5.      The Presentence Investigation Report was prepared by the Probation Office on August 13, 2008. (Doc. 27) Based upon the total offense level of 37 and all other factors contained in the report, including a criminal history category of VI, the probation officer recommended that Kimbrough receive a 240-month term of imprisonment,[2] a 3-year term of supervised release following his release from prison, and a special assessment of $100.00. (*Id.*, Sentencing Recommendation, at 1-3) The defendant interposed no objections to the Presentence Report. (*See* Docket Sheet)

6.      During the sentencing hearing on October 9, 2008, the parties agreed that the appropriate adjusted offense level was 37 and that Kimbrough

---

[2]      The guidelines produced a range of 360 months to life imprisonment. (*See* Doc. 27, Sentencing Recommendation, at 1) However, because Count One carried a statutory maximum of 20 years imprisonment, the guideline sentence was "240 months." (*Id.*)

had a criminal history category of VI (*see* Doc. 38, Sentencing Transcript, at 4), thereby rendering a guideline range of 360 months to life but because there was a statutory maximum of 240 months that would be the maximum term of imprisonment which he could receive (*see id.*).   Thereafter, the following occurred:

> THE COURT: . . . Mr. Scully, you have anything you want to offer on Mr. Kimbrough's behalf before sentence is imposed?
>
> MR. SCULLY:      Judge, I think that . . . Mr. Kimbrough has cooperated[] . . . and I think the Government is going to make a 5K motion that he should be sentenced below the statutory maximum.
>
> . . . [A]lthough he does have an extensive criminal history, much of it is related to his drug addiction. And we would ask that the Court recommend that any sentence include a recommendation that he participate in a comprehensive, residential drug treatment program, of course.
>
> I wanted to make something a matter of record. . . . We have decided to defer potential argument about the range of sentence because they weren't worth arguing about because of the statutory maximum being 20 years.
>
> . . . [M]y calculation of the Guidelines, even if I grant all of the potential issues that were out there, it's still right at the statutory maximum, and so it's not a matter that – – I've discussed that with Mr. Kimbrough, and we don't want to make any objection to the Presentence Investigation Report.
>
> That's all Judge.

THE COURT:        Mr. May, you have a motion?

MR. MAY:    Yes, Your Honor. I apologize for not filing it in advance or having it in writing today[.] I'll make it orally, but we had some last-minute discussions about some things and just kind of worked it out at the last minute.

I would say that Mr. Kimbrough is fortunate that what happened in this case is we made these buys from him, and a lot of the information that dealt with the conspiracy was developed after the indictment. He could have been facing a whole lot more time here than 360 to life, but we base the indictment on the substantive counts of less than 50 grams, in fact, less than five grams, which gives him the 20-year maximum in this case.

I'm going to make a recommendation for a downward departure of about 15 percent to 210 months. And the reason I do this  – – and the agent had mixed emotions about this, quite frankly, thinking that the Defendant hasn't been completely forthright about all of his drug knowledge, and that's part of the reason it's limited.

And the other reason is that it was marginal use. And what he did do, and what he should get credit for, . . . one of his suppliers was a person by the name of Nathaniel Vanzant, who was a significant supplier who was bringing in approximately two kilos of powder cocaine a week or every other week into the Mobile area. He had an old school stove top method of cooking and was cooking the powder cocaine into . . . what they call crack cocaine pies that were about a quarter kilo a pie, and was moving significant amounts of crack cocaine.

And this Defendant was one of his customers, and he stood ready to testify against Vanzant. And we went over to . . . I believe it was the Escambia County Jail and interviewed him, and he was prepared to testify and talk to us and was prepared to testify that day, and we were planning to bring him over. And ultimately, Vanzant pled guilty, I believe, within a week of the

trial. So, it was a last-minute plea so we didn't have to, but he did stand ready to testify.

Now, part of the reason the information was of limited significance, and although I always credit someone who is willing to testify, is that Vanzant . . . had confessed at the time of the arrest and made some very damaging admissions. So, we felt we had a pretty strong case.

Obviously, this information . . . would have been helpful and we were planning to use it, but I wanted to give a perspective on the case. And . . . so we think it's a generous 5K motion under all the circumstances.

THE COURT:       Mr. Scully, you want to be heard on the motion?

MR. SCULLY:       Judge, I think that Mr. Kimbrough . . . has expressed a willingness to provide additional information or remains willing to do that . . . . [W]e think that's an appropriate motion and would ask the Judge to follow the Government's recommendation.

THE COURT:       Mr. May, do you anticipate that there may be future use of Mr. Kimbrough's cooperation and testimony?

MR. MAY:  Potentially, Your Honor. And there's actually an unsolved murder of an individual by the name of Johnny Murphy, aka Poo, and they are all pointing fingers at each other. Several people have pointed fingers at this Defendant as the perpetrator. He adamantly denies it, and he points fingers at others, and we don't know . . . .

But should that case develop . . . or other narcotics cases be developed, we . . . are leaving it open for further reduction if he can provide substantial information in the future.

THE COURT:      All right. Then based on the information supplied in support of the Government's motion pursuant to 5K1 of the Sentencing Guidelines, I find the motion well taken and will grant the motion for a downward departure.

Mr. Scully, you have anything further you want to offer on Mr. Kimbrough's behalf before sentence is imposed?

MR. SCULLY:      No, sir, Judge.

THE COURT:      Mr. Kimbrough, do you have anything you want to say before sentence is imposed?

DEFENDANT:      I'm greatly sorry for what I've done . . . . I learned from my mistakes. I just put my hands in the good Lord's hands that everything will work out.

And I know I didn't kill Johnny Murphy. That's a fact.

THE COURT:      Of course, you're not here for that.

DEFENDANT:      I know.

THE COURT:      You're just here for the . . . cocaine charge against you, and that's all we are dealing with here today. All right. I have considered all of the information I have available to me, all of that contained in the Presentence Report, and I've considered it in light of the requirements of Section 3553(a) of Title 18, which requires me to consider your personal history and characteristics, the nature of the offense and your criminal history, and I do so.

And I have determined that in this case, the requirements for sentencing and the Sentencing Guidelines as tempered by the Government's 5K1 motion coincide, that being a 210-month sentence that I have determined to be appropriate and reasonable under the circumstances. And I do so because I have taken in consideration your extensive criminal history. You've come

here with 14 criminal history points . . . which plays into the guideline sentence.

Your substantial involvement in the distribution of cocaine in this community, based on what I read in the report, and all of the other personal history and characteristics and information that I have received from the report, all of that advises me that the sentence of 210 months is appropriate and reasonable under the circumstances.

Having granted the Government's motion for a downward departure, and having considered all of that information, it is the judgment of this Court that you, Roderick Keith Kimbrough, are hereby committed to the custody of the United States Bureau of Prisons for a term of 210 months as to Count One of the indictment.

I will recommend that you be imprisoned at an institution where a residential, comprehensive, substance abuse treatment program is available. It will be up to you to . . . take advantage of that program and to receive any benefits that may come from the treatment program.

Upon release from imprisonment, you shall be placed on supervised release for a term of three years as to Count One of the indictment. Within 72 hours of release from custody of the Bureau of Prisons, you shall report in person to the probation office in the district to which you are released. While on supervised release, you shall not commit any Federal, state, or local crimes, you shall be prohibited from possessing a firearm or other dangerous device, and shall not possess a controlled substance. In addition, you shall comply with the standard conditions of supervised release as recommended by the Sentencing Commission and on record with this Court.

The Court also orders that you comply with the following special condition of supervised release; that is, that you shall participate in a program of testing and treatment for drug and/or

23

alcohol abuse as directed by the Probation Office.

The Court finds that you do not have the ability to pay a fine; therefore, no fine is imposed.

For the reasons given, the Court finds that the sentence imposed addresses the seriousness of the offense and the sentencing objectives of punishment, deterrence, and incapacitation.

It is ordered that you pay a special assessment in the amount of $100 on Count One, which is due immediately.

You can appeal your conviction if you believe that your guilty plea was somehow unlawful or involuntary of if there's some other fundamental defect in the proceedings not waived by your guilty plea or your plea agreement.

You have the right to apply for leave to appeal in forma pauperis, and the Clerk of Court will prepare and file notice of appeal upon your request. With few exceptions, any notice of appeal must be filed within 10 days of the date of judgment.

I note that there's a remaining count of the indictment. Does the Government have a motion?

MR. MAY:   Yes, Your Honor. The United States would move to dismiss Count Two of the indictment.

THE COURT:        All right. The motion is granted. Count Two of the indictment is hereby dismissed. Anything further from the Government at this time?

MR. MAY:   No, Your Honor.

.        .        .

THE COURT:        Mr. Scully, do you have any

24

objections or any other matters that we need to put on the record
at this time?

          MR. SCULLY:      No, sir.

(*Id.* at 4-11; *see also* Doc. 28 (judgment in a criminal case entered on October

21, 2008))

       7.    On October 26, 2009, Kimbrough filed the present collateral

attack on his conviction and sentence pursuant to 28 U.S.C. § 2255. (Doc. 35)

Therein, petitioner raises the following grounds which he claims entitle him

to relief: (1) the district court lacked subject matter jurisdiction on all grounds

listed in this motion (Doc. 35, at 4; *see also id.* ("My sentence was imposed in

violation of the Federal Constitution and laws of the United States[] . . .

[b]ecause appointed counsel did not challenge grand jury proceeding[s.]"); (2)

ineffective assistance of counsel due to trial counsel's failure to challenge

probable cause (*id.* at 5), his failure to inform him that his sentence would be

increased considerably based upon the 100:1 ratio (*id.* at 11), his failure to

raise mitigating circumstances in support of a reduced sentence (*see id.*), and

his failure to file a Fed.R.Crim.P. 32(c) motion (*id*. at 12)[3];[4] (3) the court failed to "hold" his sentence "under the reasonableness standard invoking a *Booker* violation" (*id*. at 7; *see also id*. ("During my sentencing I was never informed by the court on [10/9/08] at it relate to the date the sentence was imposed that the guidelines are no longer 'mandatory' but are 'advisory.'"); (4) the indictment was defective because it failed to inform him that "the 100:1 ratio [] trumps a greater sentence" (*id*. at 8) and because it failed to inform him of "interstate commerce[]" (*id*. at 11); and (5) an *Apprendi* violation (*see id*. ("The Supreme Court held [] a Judge is prohibited from any enhancements to the defendant's statutory maximum sentence based upon the facts not pleaded in indictment, or admitted by defendant . . . . I, Roderick Keith Kimbrough[,] never admitted to a 100:1 [ratio] that was never in the Indictment that the

---

[3]       Rule 32(c) of the Federal Rules of Criminal Procedure relates to the presentence investigation report prepared by the probation office. Presumably, Kimbrough intends to suggest that his attorney should have filed objections to that report.

[4]       Petitioner concludes his § 2255 motion with the following "cumulative effects" argument: "There is a reasonable probability that appointed counsel's unprofessional omissions deprived I, Roderick Keith Kimbrough, of a substantive or procedural right, including but not limit[ed] to depriving me of a favorable downward adjustment or departure, and failed to prevent an improper upward adjustment on 100:1 [ratio] in my sentencing under the guidelines, under relevant statutes, and under the Constitution, thus sentence is violative of the Sixth Amendment Constitutional right to effective assistance of counsel and is, therefore, subject to this collateral attack." (*Id*. at 12) As reflected *infra*, none of petitioner's arguments have merit; therefore, his "cumulative effects" argument has no merit.

26

Grand Jury handed down or that was in the plea."))[5]

8.     The United States filed its response in opposition on December 10, 2009. (Doc. 39) Therein, the government argues that petitioner's ineffective assistance of counsel claims, as they relate to his sentencing, are without merit and that all other claims raised by petitioner are due to be dismissed. (*Id*. at 3-12) Kimbrough was instructed by order entered on November 2, 2009 to file his reply within thirty (30) days of the filing of the response by the government (Doc. 36), thereby making his reply due on or before January 11, 2010 (*compare id. with* Doc. 39). To date, this Court has not received a reply from the petitioner.

## **CONCLUSIONS OF LAW**

1.     28 U.S.C. § 2255 reads, in relevant part, as follows: "A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess

---

[5]     In addition, in the self-styled "affidavit" attached to his § 2255 motion he appears to contend that (1) he was denied Equal Protection of the law due to the failure of authorities to take him before a Magistrate Judge within 48 hours of arrest, (2) his PSI was fabricated, and (3) it was his understanding that by pleading guilty to distributing 3.8 grams of crack cocaine he would receive a sentence of 70 months. (*See* Doc. 35, at 15)

of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence."

2.     In this instance, Kimbrough contends, in part, that constitutionally ineffective assistance of counsel entitles him to the relief afforded by 28 U.S.C. § 2255.[6] In order to establish a claim of ineffective assistance of counsel, a petitioner is required to show (1) that his attorney's representation fell below "an objective standard of reasonableness" and (2) that a reasonable probability exists that but for counsel's unprofessional conduct, the result of the proceeding would have been different. *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). "The petitioner bears the burden of proof on the 'performance' prong as well as the 'prejudice' prong of a *Strickland* claim, and both prongs must be proved to prevail." *Johnson v. Alabama*, 256 F.3d 1156, 1176 (11th Cir. 2001), *cert.*

---

[6]     Once a criminal defendant enters a guilty plea, he waives all non-jurisdictional challenges to the conviction's constitutionality and only an attack on the voluntary and knowing nature of the plea can be raised. *See McMann v. Richardson*, 397 U.S. 759, 772, 90 S.Ct. 1441, 1449, 25 L.Ed.2d 763 (1970). Stated differently, "a voluntary and intelligent plea made by an accused person, who has been advised by ***competent counsel***, may not be collaterally attacked." *Mabry v. Johnson*, 467 U.S. 504, 508, 104 S.Ct. 2543, 2546-2547, 81 L.Ed.2d 437 (1984) (emphasis supplied). Therefore, when a § 2255 motion is filed collaterally challenging convictions obtained pursuant to guilty pleas, "the inquiry is ordinarily confined to whether the underlying plea was both counseled and voluntary." *United States v. Broce*, 488 U.S. 563, 569, 109 S.Ct. 757, 762, 102 L.Ed.2d 927 (1989).

*denied sub nom. Johnson v. Nagle*, 535 U.S. 926, 122 S.Ct. 1295, 152 L.Ed.2d

208 (2002).[7] The *Strickland v. Washington* standard for evaluating claims of

ineffective assistance of counsel was held applicable to guilty pleas in *Hill v.*

*Lockhart*, 474 U.S. 52, 58, 106 S.Ct. 366, 370, 88 L.Ed.2d 203 (1985).

> To succeed on such a claim, "the defendant must show that
> counsel's performance was deficient.  This requires showing
> that counsel made errors so serious that counsel was not
> functioning as the 'counsel' guaranteed the defendant by the
> Sixth Amendment."  *Strickland v. Washington*, 466 U.S. 668,
> 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984).[8]  In addition,
> the defendant must establish that "counsel's constitutionally
> ineffective performance affected the outcome of the plea
> process."  *Hill*, 474 U.S. at 59, 106 S.Ct. at 370.  In other words,
> . . . [a petitioner] "must show that there is a reasonable
> probability that, but for counsel's errors, he would . . . have
> pleaded [not] guilty and would . . . have insisted on going to
> trial."  *Hill*, 474 U.S. at 59, 106 S.Ct. at 370.

*Coulter v. Herring*, 60 F.3d 1499, 1504 (11th Cir. 1995) (footnote, brackets

and ellipses added), *cert. denied sub nom. Coulter v. Jones*, 516 U.S. 1122,

---

[7]     It is proper in considering claims made by a federal prisoner under § 2255 to look for guidance from cases discussing claims raised by state prisoners under 28 U.S.C. § 2254. *See Hagins v. United States,* 267 F.3d 1202, 1205 (11th Cir. 2001) (citing *Holladay v. Haley*, 209 F.3d 1243 (11th Cir. 2000)), *cert. denied*, 537 U.S. 1022, 123 S.Ct. 545, 154 L.Ed.2d 432 (2002).

[8]     "When analyzing ineffective-assistance claims, reviewing courts must indulge a strong presumption that counsel's conduct fell within the wide range of reasonably professional assistance."  *Smith v. Singletary*, 170 F.3d 1051, 1053 (11th Cir. 1999) (citations omitted).

116 S.Ct. 934, 133 L.Ed.2d 860 (1996).[9] Of course, in the context of sentencing following entry of a guilty plea the court simply considers whether petitioner has established, in accordance with *Strickland, supra*, that his attorney was deficient and that he was prejudiced by this deficiency in performance. *See, e.g., Myers v. United States,* 2009 WL 1505638, *1 (W.D. Pa. 2009) ("In order for petitioner to succeed on an ineffective assistance of counsel claim, he must prove: (1) that his counsel was deficient; and (2) that he was prejudiced by his counsel's deficiency.").

3.     When applying the *Strickland* standard, it is clear that courts "are free to dispose of ineffectiveness claims on either of its two grounds." *Oats v. Singletary*, 141 F.3d 1018, 1023 (11th Cir. 1998) (citation omitted), *cert. denied sub nom. Oats v. Moore*, 527 U.S. 1008, 119 S.Ct. 2347, 144 L.Ed.2d 243 (1999); *see also Butcher v. United States*, 368 F.3d 1290, 1293 (11th Cir. 2004) ("[O]nce a court decides that one of the requisite showings has not been made it need not decide whether the other one has been.").

4.     Petitioner's conclusory allegations of ineffective assistance of counsel do not entitle him to relief. His first claim is that his attorney was

---

[9]     "'[T]he cases in which habeas petitioners can properly prevail on the ground of ineffective assistance of counsel are few and far between.'" *Johnson, supra,* 256 F.3d at 1176 (citation omitted).

ineffective in failing to challenge probable cause for his April "19", 2008 arrest.[10] However, the undersigned finds that there was no deficiency in his attorney's performance in this regard inasmuch as the presentence report clearly establishes that petitioner was arrested on April 20, 2008 by Prichard police officers performing surveillance on him in the Eight Mile area of Mobile County (*see* Doc. 27, at 5), as opposed to the officer who obtained a federal warrant for his arrest on April 15, 2008 (*see* Docs. 1 &2).[11] Thereafter, petitioner was indicted on April 25, 2008 (Doc. 3) and made his initial appearance on April 5, 2008 (Doc. 6).[12] Because the indictment establishes

---

[10]    "A mere averment that police lacked probable cause to arrest defendant is insufficient without an assertion of facts to support the claim." *United States v. Green*, 2007 WL 1221230, *1 (S.D. Ga.), *report & recommendation adopted by* 2007 WL 1615127 (2007).

[11]    In fact, this warrant was never returned as being served. (Doc. 2) There was certainly probable cause for issuance of this warrant, however, as the facts set forth in the affidavit of Coporal Dawn Alfonsi established probable cause to believe that Kimbrough possessed with intent to distribute cocaine on February 8, 2008 and March 31, 2008 in violation of 21 U.S.C. § 841(a)(1). (*See* Doc. 1, Affidavit Attached to Criminal Complaint; *compare id. with Garmon v. Lumpkin County, Georgia*, 878 F.2d 1406, 1409 (11th Cir. 1989) (whether probable cause existed for arrest must be answered by reviewing the facts in the affidavit accompanying the criminal complaint and application for the warrant) and BLACK'S LAW DICTIONARY, at 1239 (8th ed. 2004) ("Under the Fourth Amendment, probable cause – which amounts to more than a bare suspicion but less than evidence that would justify a conviction – must be shown before an arrest warrant . . . may be issued.")) .

[12]    Based on these facts, it is clear that Kimbrough was in state custody at the time he was indicted on federal charges. Therefore, he cannot establish that he did not appear in federal court in a timely manner. Accordingly, his argument that he was denied Equal Protection of the law due to the failure of authorities to take him before a federal magistrate judge within 48 hours of his arrest has no merit.

probable cause, *Afanasjev v. Hurlburt,* 418 F.3d 1159, 1164 n.11 (11th Cir.) ("While an indictment may not be evidence of guilt, it can, under some circumstances, be sufficient to demonstrate that probable cause exists."), *cert. denied,* 546 U.S. 993, 126 S.Ct. 587, 163 L.Ed.2d 489 (2005), petitioner's attorneys were without a probable cause argument to make.

5.     Petitioner's other claims of ineffective assistance of counsel pertain to his sentencing, Kimbrough contending that his attorney (1) failed to inform him that his sentence would be increased considerably based upon the 100:1 ratio, (2) failed to raise mitigating circumstances in support of a reduced sentence, and (3) failed to file a Rule 32(c) motion. To place petitioner's first sentencing argument in proper perspective, the undersigned need note that in the Eleventh Circuit district courts "must still correctly determine the advisory Guidelines range by using the 100-to-1 ratio[,]" before varying from that advisory range upward or downward based upon application of the § 3553(a) factors. *United States v. Williams,* 472 F.3d 835, 841 (11th Cir. 2006); *see also United States v. Pope*, 461 F.3d 1331, 1337 (11th Cir. 2006); *see United States v. Hackman*, 284 Fed.Appx. 743, 746 (11th Cir. 2008) ("The sentencing disparity between cocaine and crack does not violate equal protection. Hackman's reliance on *Kimbrough* is misplaced because its holding, that

district courts are permitted to disagree with the policies underlying the guidelines, is unrelated to the constitutionality of the sentencing disparity." (internal citations omitted)).[13]   In this case, it is not only clear that the Court correctly applied the 100:1 ratio in determining the advisory guideline range of 360 months to life imprisonment but then went further and properly determined that since the advisory guidelines range surpassed the statutory maximum sentence of 20 years imprisonment, the Court was bound by the statutory maximum of 240 months (i.e., 20 years).[14] Therefore, even if petitioner correctly represents to this Court that his attorney failed to inform him that his sentence would be increased considerably based upon the 100:1 ratio, he has not shown how he was prejudiced by this lack of information since he did not receive a guidelines sentence in the range of 360 months to life. In other words, the 100:1 ratio did not inform nor did it have any impact on petitioner's sentence; instead, his sentence was informed by the statutory maximum, a sentence with which he was very much aware (*see* Doc. 38,

---

[13]      Nothing in *Kimbrough v. United States*, 552 U.S. 85, 128 S.Ct. 558, 169 L.Ed.2d 481 (2007) requires this Court to utilize a 1:1 ratio, or something less than a 100:1 ratio, in determining, in the first instance, the advisory Guidelines range. *Gilchrist v. United States*, 2009 WL 2163103, *3 (M.D. Fla. 2009).

[14]      In other words, the maximum sentence facing petitioner under Count One of the indictment was 20 years, as set forth in the statute.

Guilty Plea Tr., at 8 ("[I]f convicted of Count One of the indictment, you could receive a term of imprisonment up to 20 years, a fine not to exceed one million dollars, a supervised release term of up to five years, and a special assessment of $100. Do you understand that? DEFENDANT KIMBROUGH: Yes, sir.") *compare id. with* Doc. 21, Plea Agreement, at 3 ("The maximum penalty the Court could impose as to Count One of the Indictment is: a. 20 years imprisonment[.]")).  Therefore, petitioner is not entitled to relief on the basis of this claim.[15]

6.     Petitioner's contention that his attorney erred in failing to raise mitigating circumstances in support of a reduced sentence is not only conclusory but it is also baseless as Kimbrough points to no such circumstances that would support a more reduced sentence than that which he received in light of his significant criminal history.[16] Kimbrough, in fact, was

---

[15]     The undersigned takes this opportunity to address petitioner's conclusory contention that his attorney failed to challenge the grand jury proceedings. First, it need be noted that petitioner's attorney could not be deficient in this regard since he did not represent Kimbrough at the time he was indicted (*compare* Doc. 3 (indictment filed in open court on April 25, 2008) *with* Doc. 16 (William E. Scully, Jr., Esquire, appointed to represent petitioner on June 4, 2008)). Moreover, Kimbrough's apparent contention that his attorney should have attacked the indictment due to its failure to inform him of the 100:1 ratio is a baseless argument since the 100:1 crack-to-cocaine ratio is a sentencing issue, *see, e.g., Pope, supra*, 461 F.3d at 1337, not an indictment (or grand jury) issue. Therefore, his attorney was not deficient in failing to interpose any "challenge" to his grand jury proceedings (or the resulting indictment).

[16]     His Rule 32(c) argument is due to be denied for this same reason. As previously indicated, since Rule 32(c) deals with preparation of the PSI, the undersigned appreciates

the beneficiary of a great deal as the government made a motion for downward departure which was granted and resulted in a 210-month term of imprisonment, as opposed to the statutory maximum of 240 months.

7. While the respondent is perhaps correct that petitioner's contention that this "court lacked subject matter jurisdiction on all grounds listed in this motion" should be dismissed under *United States v. Broce*, *supra*, there is simply no merit to this conclusory claim. As previously indicated, there is no probable cause problem in this case. Moreover, the indictment was

---

petitioner's argument to be that his attorney erred in failing to file objections to the PSI. Because petitioner does not outline for this Court what objections his attorney should have filed, nor does he demonstrate the impact such objections would have on his sentence, the undersigned can find neither that Kimbrough's attorney was deficient in this regard or that petitioner was in any manner prejudiced by his attorney's performance in this regard. As is apparent from the sentencing transcript, petitioner's attorney chose to interpose no objections to the PSI because even assuming all such objections  were fully upheld by the Court, the resulting guideline sentence would not fall below the statutory maximum of 20 years. (*See* Doc. 38, Sentencing Tr., at 4-5 ("I wanted to make something a matter of record. . . . We have decided to defer potential arguments about the range of the sentence because they weren't worth arguing about because of the statutory maximum being 20 years. . . . [M]y calculation of the Guidelines, even if I grant all of the potential issues that were out there, it's still right at the statutory maximum[.] . . . I've discussed that with Mr. Kimbrough, and we don't want to make any objection to the Presentence Investigation Report.")) Accordingly, it made no sense for counsel to make objections to the PSI since the Court would, at the end of the day, be at the same starting point, that is, the statutory maximum of 20 years.

not defective[17] for failing to inform petitioner either of "interstate commerce"[18]

or that "the 100:1 ratio [] trumps a greater sentence[.]"[19] Finally, there was

---

[17]     Regardless, the Supreme Court clearly determined in *United States v. Cotton*, 535 U.S. 625, 631, 122 S.Ct. 1781, 1785, 152 L.Ed.2d 860 (2002), that indictment defects are not jurisdictional.

[18]     There have never been any allegations against Kimbrough that he transported his crack cocaine in interstate commerce; in fact, he never left the Southern District of Alabama in respect to his possession of crack cocaine with intent to distribute same. This is very much a run-of-the-mill "intrastate" possession with intent to distribute case. Accordingly, the indictment in this case was obviously not defective for failing to allege "interstate commerce."

[19]     "'An indictment is sufficient if it: (1) presents the essential elements of the charged offense, (2) notifies the accused of the charges to be defended against, and (3) enables the accused to rely upon a judgment under the indictment as a bar against double jeopardy for any subsequent prosecution for the same offense.'" *United States v. Alls*, 304 Fed.Appx. 842, 847 (11th Cir. 2008) (quoting *United States v. Steele*, 178 F.3d 1230, 1233-1234 (11th Cir. 1999)), *cert. denied*, ___ U.S. ___, 129 S.Ct. 2073, 173 L.Ed.2d 1148 (2009). While Kimbrough has clearly waived this issue, *see Alls, supra,* at 847 ("Generally, a defendant must object before trial to defects in an indictment, and failure to do so waives any alleged defects."), Count One of the Indictment (the count to which petitioner pled guilty), charging that Kimbrough "did unlawfully, knowingly and intentionally distribute and possess with the intent to distribute a Schedule II controlled substance, to-wit: approximately 3.8 grams of a mixture and substance containing a detectable amount of cocaine, which contains cocaine base, commonly known as crack cocaine[,]" (Doc. 3, at 1), sufficiently presented the essential elements of the charged offense, *compare Alls, supra,* 304 Fed.Appx. at 847 ("The elements of a § 841(a)(1) offense are: '(1) knowledge; (2) possession; and (3) intent to distribute.'") *with United States v. Wilson*, 183 F.3d 1291, 1298 n.13 (11th Cir. 1999) ("In order to obtain a conviction under 21 U.S.C. § 841(a)(1), the Government must establish the existence of three elements: (1) knowledge (of one's possession); (2) possession of a controlled substance; and (3) intent to distribute that substance."), *cert. denied*, 530 U.S. 1231, 120 S.Ct. 2664, 147 L.Ed.2d 277 (2000), notified Kimbrough of the charges to be defended against, and enabled him to rely upon a judgment under the indictment as a bar against double jeopardy for any subsequent prosecution for the same offense.

          Based on the foregoing, Count One of the Indictment was not rendered defective (nor, for that matter, Count Two) for failure to contain any reference to the 100:1 crack-to-powder cocaine ratio. As previously indicated, this ratio is a sentencing issue, not an indictment issue.

neither a *Booker* violation[20] nor an *Apprendi* violation.

8.     All that remains of Kimbrough's § 2255 motion are the "claims" which he makes reference to in his attached "affidavit," that is, that his PSI "is fraud and fabricated[]" and that he "pled guilty to distributing 3.8 grams of crack cocaine with the understanding . . . [he] would get 70 months[.]" (Doc. 35, Attached Affidavit) Petitioner has not established that any portion of his PSI was fabricated (or constitutes a fraud); therefore, he is clearly not entitled to any relief based on this claim. Moreover, petitioner has set forth no plausible explanation for this Court to believe, particularly in light of his significant criminal history, that he could have ever had the understanding that

---

[20]     In *United States v. Booker*, 543 U.S. 220, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005), the Supreme Court held that the sentencing guidelines are advisory, *id.* at 245, 125 S.Ct. at 757, and reaffirmed its holding in *Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000) that "[a]ny fact (other than a prior conviction) which is necessary to support a sentence exceeding the maximum authorized by the facts established by a plea of guilty or a jury verdict must be admitted by the defendant or proved to a jury beyond a reasonable doubt." *Id.* at 244, 120 S.Ct. at 756. Kimbrough's contention that he was not informed by the Court during his sentencing proceeding that the sentencing guidelines are advisory in contravention of *Booker, supra,* ignores not only that he received this information through the plea agreement and during his guilty plea hearing but, as well, that the guideline range of 360 months to life obviously was not applied to his case in a mandatory fashion. Instead, entirely consistent with *Apprendi, supra,* the Court informed petitioner that he could not receive a guidelines-range sentence between 360 months and life because it exceeded the maximum sentence (20 years) allowed by statute and, therefore, the Court started with a 20 year sentence from which it then departed downward to a 210-month sentence. Stated differently, the "facts" established by petitioner's plea of guilty supported the statutory maximum sentence of 20 years and, therefore, consistent with *Apprendi,* this Court properly started with a 20-year sentence and, upon granting the government's oral motion for downward departure, ultimately sentenced petitioner to a 210-term of imprisonment. Accordingly, there was no *Booker* or *Apprendi* violation in this case.

he would be imprisoned for 70 months by pleading guilty to Count One of the Indictment. In fact, he was specifically informed during his guilty plea proceeding not only that the statutory maximum was 20 years but, as well, that a guidelines determination could not be made until after completion of the presentence report and, therefore, any guidelines sentence imposed could well be different from any estimate given him by his attorney or anyone else (Doc. 38, Guilty Plea Tr., at 8 & 9-10). Accordingly, the undersigned finds Kimbrough's conclusory 70-month sentence argument to be without any merit.[21]

9.   In consideration of the foregoing, the Magistrate Judge recommends that the Court deny Kimbrough's motion to vacate, set aside or correct his sentence under 28 U.S.C. § 2255.

10.   Pursuant to Rule 11(a) of the Rules Governing § 2255 Proceedings, the undersigned recommends that a certificate of appealability in this case be denied. 28 U.S.C. foll. § 2255, Rule 11(a) ("The district court must issue or deny a certificate of appealability when it enters a final order adverse

---

[21]   Kimbrough is not entitled to an evidentiary hearing in this case in light of his wholly conclusory allegations. *Tejada v. Dugger*, 941 F.2d 1551, 1559 (11th Cir. 1991) ("A petitioner is *not* entitled to an evidentiary hearing . . . 'when his claims are merely "conclusory allegations unsupported by specifics" or "contentions that in the face of the record are wholly incredible."'"), *cert. denied sub nom. Tejada v. Singletary*, 502 U.S. 1105, 112 S.Ct. 1199, 117 L.Ed.2d 439 (1992).

to the applicant."). The habeas corpus statute makes clear that an applicant is entitled to appeal a district court's denial of his habeas corpus petition only where a circuit justice or judge issues a certificate of appealability. 28 U.S.C. § 2253(c)(1).   A certificate of appealability may issue only where "the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2243(c)(2). Where, as here, a habeas petition is being denied on the merits of any and all underlying constitutional claims, a COA should issue only when the petitioner demonstrates "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong[,]"*Slack v. McDaniel*, 529 U.S. 473, 484, 120 S.Ct. 1595, 1604, 146 L.Ed.2d 542 (2000); *see also id.* at 483-484, 120 S.Ct. at 1603-1604 ("To obtain a COA under § 2253(c), a habeas prisoner must make a substantial showing of the denial of a constitutional right, a demonstration that, under *Barefoot*, includes showing that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were "'adequate to deserve encouragement to proceed further.'""); *see Miller-El v. Cockrell,* 537 U.S. 322, 336, 123 S.Ct. 1029, 1039, 154 L.Ed.2d 931 (2003) ("Under the controlling standard, a petitioner must 'sho[w] that reasonable jurists could debate whether  (or, for

that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were "adequate to deserve encouragement to proceed further."'"). The undersigned recommends that the Court find that reasonable jurists could not debate whether Kimbrough's § 2255 motion to vacate should be resolved in a different manner or that any of the issues presented are adequate to deserve encouragement to proceed further. Accordingly, petitioner is not entitled to a certificate of appealability.

## CONCLUSION

The Magistrate Judge is of the opinion that petitioner's rights were not violated in this cause and that his request to vacate, set aside or correct his sentence should be **DENIED**. Petitioner is not entitled to a certificate of appealability and, therefore, he is not entitled to appeal *in forma pauperis*.

The instructions which follow the undersigned's signature contain important information regarding objections to the report and recommendation of the Magistrate Judge.

**DONE** this the 5th day of February, 2010.

     s/WILLIAM E. CASSADY       
**UNITED STATES MAGISTRATE JUDGE**

40

**MAGISTRATE JUDGE'S EXPLANATION OF PROCEDURAL RIGHTS AND
RESPONSIBILITIES FOLLOWING RECOMMENDATION, AND
FINDINGS CONCERNING NEED FOR TRANSCRIPT**

l.      *Objection.*  Any party who objects to this recommendation or anything in it must, within fourteen (14) days of the date of service of this document, file specific written objections with the Clerk of this court.  Failure to do so will bar a *de novo* determination by the district judge of anything in the recommendation and will bar an attack, on appeal, of the factual findings of the Magistrate Judge.  *See* 28 U.S.C. § 636(b)(1)(C); *Lewis v. Smith*, 855 F.2d 736, 738 (11th Cir. 1988); *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. Unit B, 1982)(*en banc*).  The procedure for challenging the findings and recommendations of the Magistrate Judge is set out in more detail in SD ALA LR 72.4 (June 1, 1997), which provides that:

> A party may object to a recommendation entered by a magistrate judge in a dispositive matter, that is, a matter excepted by 28 U.S.C. § 636(b)(1)(A), by filing a 'Statement of Objection to Magistrate Judge's Recommendation' within ten days[22] after being served with a copy of the recommendation, unless a different time is established by order.  The statement of objection shall specify those portions of the recommendation to which objection is made and the basis for the objection.  The objecting party shall submit to the district judge, at the time of filing the objection, a brief setting forth the party's arguments that the magistrate judge's recommendation should be reviewed *de novo* and a different disposition made.  It is insufficient to submit only a copy of the original brief submitted to the magistrate judge, although a copy of the original brief may be submitted or referred to and incorporated into the brief in support of the objection.  Failure to submit a brief in support of the objection may be deemed an abandonment of the objection.

> A magistrate judge's recommendation cannot be appealed to a Court of Appeals; only the district judge's order or judgment can be appealed.

2.      *Transcript (applicable Where Proceedings Tape Recorded).*  Pursuant to 28 U.S.C. § 1915 and FED.R.CIV.P. 72(b), the Magistrate Judge finds that the tapes and original records in this case are adequate for purposes of review.  Any party planning to object to this recommendation, but unable to pay the fee for a transcript, is advised that a judicial determination that transcription is necessary is required before the United States will pay the cost of the transcript.

---

[22]      Effective December 1, 2009, the time for filing written objections was extended to "14 days after being served with a copy of the recommended disposition[.]" Fed.R.Civ.P. 72(b)(2).

41